Filed 12/30/25

**CERTIFIED FOR PARTIAL PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR


|  |  |
|---|---|
| COALITION OF PACIFICANS FOR AN UPDATED PLAN et al., <br><br>     Plaintiffs and Respondents, <br><br>        v. <br><br> CITY COUNCIL OF THE CITY OF PACIFICA et al., <br><br>     Defendants and Appellants; <br><br> MONTEREY ROAD PACIFICA, LLC, et al., <br><br>      Real Parties in Interest and Appellants. | A170704 <br><br> (San Mateo County <br> Super. Ct. No. 20CIV05719) |

Plaintiffs Coalition of Pacificans for an Updated Plan and Kristin Cramer (collectively, plaintiffs) brought this action in the trial court under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) to challenge the approval of a housing development project in Pacifica, sometimes referred to as the Vista Mar project (the Project). After obtaining a ruling that defendants City Council of the City of Pacifica and City of Pacifica (collectively, the City or the City defendants) should have

---

     * Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C and II.D.

1

prepared an environmental impact report (EIR) for the Project, plaintiffs moved for an award of attorney fees under Code of Civil Procedure section 1021.5. Plaintiffs asked that fees be awarded against both (1) the City defendants, and (2) the parties that plaintiffs had named as real parties in interest on the ground they were the project applicants—Monterey Road Pacifica LLC, Vistamar Development, and Javier Chaverria (all of whom were alleged to have actively participated in the action). (We will sometimes refer to these three parties collectively as Monterey or the Monterey parties.)

Following extensive briefing and multiple hearings, the trial court granted the fee motion, concluding "a significant benefit has been conferred on the general public and the necessity of private enforcement makes the attorneys' fees and cost award appropriate in this case." The court awarded about $1.2 million in fees, with the City defendants and the Monterey parties jointly and severally liable for most of the amount, and the three Monterey parties jointly and severally liable for the remainder.

On appeal, the City defendants and the Monterey parties contend the fee award should be reversed because the trial court did not correctly apply the Housing Accountability Act (HAA) (Gov. Code, § 65589.5).[1] Specifically, we are asked to decide whether the trial court's fee award comports with a recently enacted provision of the HAA, section 65589.5, subdivision (p)(1), which states in part that a court considering a motion for attorney fees under Code of Civil Procedure section 1021.5 in an action challenging a local agency's approval of a housing development project must give "due weight" to certain listed factors. We address this issue in the published portion of our opinion.

_____

[1] Undesignated statutory references are to the Government Code.

In addition to their primary argument advanced under section 65589.5, subdivision (p)(1), of the HAA, the City and the Monterey parties raise a series of secondary issues. The City contends that, if a fee award is appropriate, it should be reduced to reflect that plaintiffs did not establish liability on a non-CEQA claim they asserted in their pleadings. For their part, the Monterey parties assert the court erred by imposing joint and several liability on two of their number, Vistamar Development and Javier Chaverria, who allegedly did not actively participate in the litigation.[2] We address these secondary issues in the unpublished portion of our opinion.

As we shall explain below, we conclude the trial court abused its discretion in applying section 65589.5, subdivision (p)(1). We therefore will vacate the fee award and remand for further proceedings. We reject the City's and Monterey's secondary challenges to the fee award.

## I. BACKGROUND

### A. *The City's Approval of the Project*

The proposed Project would involve construction of eight residential units (four buildings, each with two townhome units) on a 1.2-acre site. As described in the Initial Study/Mitigated Negative Declaration (IS/MND) prepared by the City, the Project site "consists of a 53,000-square foot (sf) lot, with steep, sloping terrain and dense vegetation. The site is located on

---

[2] We granted leave to permit the filing of amicus curiae briefs from (1) Endangered Habitats League, Planning and Conservation League, Communities for a Better Environment, and Environmental Defense Center; (2) YIMBY Law, the Bay Area Council, the California Building Industry Association, Californians For Homeownership, Inc., the California Housing Defense Fund, the California Housing Partnership Corporation, the Housing Action Coalition, and the San Francisco Bay Area Planning and Urban Research Association; and (3) the League of California Cities and the California State Association of Counties.

3

Monterey Road approximately 0.1-mile south of the intersection with Hickey Boulevard in the City of Pacifica, California. Currently, the project site is vacant and undeveloped. The site is bordered by a single-family residence to the south, a multi-family apartment complex west across Monterey Road, and vacant land to the north and east."

In 1991, a developer submitted an application to build townhouses on the Project site. The City's Planning Commission denied the application, noting in part that "the eastern slope [of the site] is characterized by an erosional gully with active or recently active landslides." The City Council overturned the denial and returned the project to the Planning Commission for further review, but the applicant later withdrew the application for reasons not disclosed in the record.

On May 9, 2002, another developer submitted an application for the Project, but the application was not deemed complete until 2015.[3]

As summarized by the trial court in its June 20, 2022 order addressing the merits of plaintiffs' CEQA claim, "[t]he approved 8-unit Project includes four (4) separate buildings, each containing two (2) side-by-side, three-story townhouses, including one unit to be sold as affordable, *i.e.*, below market. The Project will grade 0.7 acres of land and clear 'any' vegetation from the building area. The Project will also remove seven (7) heritage trees and 50 other trees, and it will destroy 96 feet of the ephemeral drainage and 0.26 acres of arroyo willow riparian habitat."

After the completion of the Project application in November 2015, the City issued a request for proposals (RFP) to conduct environmental review of

---

[3] Following submission of the application, City planning staff deemed the application incomplete and requested additional information in letters dated June 7, 2002, June 30, 2003, October 15, 2004, May 31, 2007, March 30, 2010, August 7, 2014, and July 2, 2015.

the Project under CEQA. Some delays followed; the Project property was sold to Monterey Road Pacifica LLC in late 2018; and the Project applicants reinitiated with City planning staff. The City then issued a new RFP in January 2019 and ultimately selected Raney Planning and Management (Raney) as its CEQA consultant to conduct the review. In January 2020, the City released the IS/MND for a 30-day public review and comment period.

The City received eight comment letters on the IS/MND during the 30-day public comment period. Raney, working with City staff, prepared written responses to the comments. After an initial hearing before the City's Planning Commission (the Planning Commission) on August 3, 2020, the City received four additional comment letters on the IS/MND from consultants hired by Project opponents. Written responses were again prepared. Some changes were made to the IS/MND, and errata sheets were released. The IS/MND ultimately concludes that, although the Project could have potentially significant environmental impacts (relating to biological resources; geology and soils; hydrology and water quality; noise; cultural resources; and tribal culture), the mitigation measures it outlines will avoid or reduce all the potentially significant impacts.

The Planning Commission held public hearings on the Project on August 3, 2020 and October 19, 2020. At the October 19 meeting, the Planning Commission voted unanimously to adopt the IS/MND and the necessary approvals for the Project. In advance of each hearing, City planning staff prepared and published a report that analyzed the Project, responded to comments, and listed changes made in response to prior comments and requests.

Kristin Cramer and the Vista Mar Preservation Alliance appealed the Project approvals to the City Council. In addition, Coalition of Pacificans for

an Updated Plan (CPUP) submitted written comments urging the City to prepare an EIR and to refrain from approving the Project pending proper CEQA review. CPUP also raised issues pertaining to general plan inconsistency and inadequacy.

On November 23, 2020, the City Council held a public hearing on the appeals. Prior to the hearing, City staff prepared and published a report addressing the arguments raised in the appeals and recommending that the City Council deny them. The City Council denied the appeals by a 3-2 vote, upheld the Planning Commission's adoption of the IS/MND, and approved the Project.

## B. *Proceedings in the Trial Court*

### 1. The Judgment on Plaintiffs' CEQA Claim

To challenge the City's approval of the Project, plaintiffs sought relief in the trial court via a petition for writ of mandate in December 2020 and the operative first amended petition (FAP) in May 2021. The FAP includes causes of action for (1) violation of CEQA (first cause of action), and (2) violation of the law governing general plans (§ 65300 et seq.) (second cause of action).

In January 2022, plaintiffs filed a motion for judgment on their CEQA cause of action. After a hearing in April 2022, and after considering the administrative record and briefing from the parties, the court granted the motion in part in a detailed June 20, 2022 order. The court found plaintiffs had presented substantial evidence of a fair argument that the Project may have a significant effect on the environment. The court concluded the City had "prejudicially abused its discretion" in failing to prepare an EIR.

After supplemental briefing and further oral argument addressing the form of the proposed judgment and writ of mandate, the court issued an order on December 2, 2022, entered judgment on December 15, 2022, and issued a

6

peremptory writ of mandate on December 20, 2022.  Based on its earlier findings, the court rescinded all Project permits and approvals.[4]  By agreement of all parties, the court dismissed without prejudice the FAP's second cause of action "concerning various alleged General Plan Law violations . . . ."  The court found plaintiffs to be the prevailing parties on their CEQA cause of action and entitled to claim their costs of suit.  The court retained jurisdiction to ensure compliance with CEQA and to consider a motion to be filed by plaintiffs to recover attorney fees.

No party appealed the court's judgment.

**2.  The Court's Award of Attorney Fees to Plaintiffs**

In April 2023, plaintiffs filed a motion for an award of attorney fees under Code of Civil Procedure section 1021.5.  After the filing of opposition and reply briefs, the court issued a tentative ruling granting the fee motion in large part.[5]  Among other points, the court found plaintiffs met the requirements for an award of fees under Code of Civil Procedure section 1021.5, including that the litigation conferred a significant benefit on the general public, and that private enforcement of CEQA was necessary in the present case.  At a hearing on August 29, 2023, the court modified and adopted the tentative ruling, as reflected in a minute order issued after the hearing (the August 29, 2023 minute order).  The August 29, 2023 minute

---

[4] Pursuant to an agreement by the parties, the court did not order the City to prepare an EIR.  The court stated that, although its previous findings about the Project's potential impacts on the environment required preparation of an EIR, "the parties have all agreed that they do not want this Court to order a preparation of an EIR now because [CEQA] compliance may be able to be achieved without an EIR."

[5] In addition to their fee motion, plaintiffs filed a cost bill.  No party filed a motion to tax costs.  The court therefore addressed only the issue of attorney fees.

7

order directs plaintiffs' counsel to prepare a formal order reflecting the court's ruling. The parties were to meet and confer because the court had ordered certain "deductions and recalculations" of the fees requested.

After the August 29, 2023 hearing, the parties met and conferred about the form of a proposed order granting the fee motion. Plaintiffs submitted to the court a proposed order with the objections of the City and Monterey. On December 5, 2023, the court issued an order denying without prejudice plaintiffs' proposed order, scheduled a February 6, 2024 hearing on the objections to the proposed order, and permitted the parties to file supplemental briefs on January 22 and 29, 2024.

In the January 2024 briefing, the Monterey parties argued for the first time that a recently added provision of the HAA (§ 65589.5, subd. (p)(1), which took effect on January 1, 2024) required the court to make additional findings before awarding fees under Code of Civil Procedure section 1021.5. The City defendants agreed in their responsive briefing. Plaintiffs contended section 65589.5, subdivision (p)(1) did not apply but was satisfied in any event.

Before the February 6, 2024 hearing, the court issued another tentative ruling. The court heard oral argument on February 6, and then modified and adopted its tentative ruling in a minute order (the February 6, 2024 minute order). The court directed the parties to file supplemental briefs addressing the HAA, specifically section 65589.5, subdivision (p)(1).

After receiving the parties' further briefing, the court entered its final order awarding attorney fees on March 6, 2024 (the final fee order, or the March 6, 2024 order). The final fee order attached and adopted (1) the August 29, 2023 minute order, (2) the February 6, 2024 minute order, and (3) a chart showing plaintiffs' attorney fees as recalculated pursuant to the

8

court's minute orders and after conferring with the City and Monterey.  The court also attached its December 2022 judgment on the merits of plaintiffs' CEQA claim.

The court found the "time, rates and calculations" in plaintiffs' recalculated fee chart and the resulting lodestar amount were reasonable. The court also found that (as it had discussed in the August 29, 2023 minute order) a multiplier of 1.5 was appropriate for the merits work in the case due to contingent risk and delay.  The court concluded plaintiffs' fees were "reasonable and appropriate considering the factors set forth in Code of Civil Procedure section 1021.5 and giving due weight to the factors set forth in Government Code section 65589.5, subdivision (p)(1)."  The court's analysis of section 65589.5, subdivision (p)(1) (which we discuss further below) is a central focus of the challenges raised in this appeal.

The court awarded a total of $1,286,144.57 in attorney fees to plaintiffs. The court specified the City defendants and the Monterey parties would be jointly and severally liable for $998,444.93.  The three Monterey parties were made jointly and severally liable for the remaining $287,699.64.  The court later denied a motion by the Monterey parties to vacate the fee award.

The City defendants and the Monterey parties appealed.

## II. DISCUSSION

### A. *Standard of Review*

We review for abuse of discretion the trial court's finding that plaintiffs' action met the requirements for an award of attorney fees under Code of Civil Procedure section 1021.5.  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578.)  In general, an abuse of discretion is found when a trial court's ruling " ' "exceeded ' "the bounds of reason, all of the circumstances before it being considered . . . ." ' " ' " (*Maughan v. Google Technology, Inc.*

9

(2006) 143 Cal.App.4th 1242, 1249.)  We review questions of statutory interpretation de novo.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

## B. *Section 65589.5, Subdivision (p)(1)*

The City and Monterey, joined by two groups of amici curiae, contend the trial court erred in its interpretation and application of a provision added to the HAA effective January 1, 2024, section 65589.5, subdivision (p)(1), which in some circumstances modifies the inquiry a court must conduct in determining whether to award attorney fees under Code of Civil Procedure section 1021.5.  We conclude the court abused its discretion in applying the new provision.

### 1.  Statutory Framework

Under Code of Civil Procedure section 1021.5, a court may award attorney fees "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  A successful CEQA plaintiff may be entitled to fees under Code of Civil Procedure section 1021.5 on the ground that ensuring proper environmental review benefits the public. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 894.)

As we outlined in an opinion not long ago, the HAA (§ 65589.5) was enacted in 1982 and has been frequently amended to require local governments to approve more housing.  (*California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820, 835.)  The HAA itself makes clear, however, that the obligation to expand housing

10

coexists with the ongoing responsibility of local governments to conduct appropriate environmental review under CEQA. (§ 65589.5, subd. (e) [stating HAA does not relieve local agency from complying with CEQA]; see *Schellinger Bros. v. City of Sebastopol* (2009) 179 Cal.App.4th 1245, 1262.)

The HAA provision at issue in this appeal—section 65589.5, subdivision (p)(1)—was added to the statute as part of Assembly Bill No. 1633 (2023-2024 Reg. Sess.) (Assembly Bill 1633), which took effect on January 1, 2024. (Stats. 2023, ch. 768, § 2; Assem. Bill No. 1633 (2023-2024 Reg. Sess.).)[6] Section 65589.5, subdivision (p)(1) provides that, in a case challenging a local agency's approval of a housing development project, a court considering a fee motion under Code of Civil Procedure section 1021.5 must consider certain housing-related factors in determining whether the requirements for a fee award have been met.

Specifically, the first sentence of section 65589.5, subdivision (p)(1) states: "Upon any motion for an award of attorney's fees pursuant to Section 1021.5 of the Code of Civil Procedure, in a case challenging a local agency's approval of a housing development project, a court, in weighing whether a significant benefit has been conferred on the general public or a large class of persons and whether the necessity of private enforcement makes the award appropriate, shall give due weight to the degree to which

---

[6] Section 65589.5 has been amended several times since the enactment of Assembly Bill 1633, with some changes taking effect in 2025 and others that will go into effect on January 1, 2026. (Stats. 2024, ch. 265, § 1, effective Jan. 1, 2025; Stats. 2024, ch. 268, § 2.5, effective Jan. 1, 2025; Stats. 2025, ch. 22, § 11, effective June 30, 2025; Stats. 2025, ch. 509, § 1, effective Jan. 1, 2026; Stats. 2025, ch. 789, § 1.5, effective Jan. 1, 2026.) These amendments did not make substantive revisions to subdivision (p) of the statute and do not affect the substance of our analysis. All citations are to the current version of the statute as of the filing date of this opinion.

the local agency's approval furthers policies of this section, including, but not limited to, subdivisions (a), (b), and (c),[7] the suitability of the site for a housing development, and the reasonableness of the decision of the local agency."[8]

### 2. The Trial Court's Ruling

Here, the trial court concluded when it initially prepared its fee ruling in August 2023 that plaintiffs met the requirements for an award of fees under Code of Civil Procedure section 1021.5. In particular, the trial court found plaintiffs' action conferred a significant benefit on the general public by ensuring more in-depth CEQA review of the Project. The trial court acknowledged that "not every CEQA case results in the award of fees," but stated: "[T]he court does not consider this a close case in making the determination that the court should award fees." The court stated plaintiffs' showing had included four groups of experts providing substantial evidence of a fair argument that the Project may have significant adverse impacts, including "interference with wildlife fragmentation and bird deaths"; slope destabilization and erosion; negative aesthetic impacts; and air quality

---

[7] As we discuss further below, subdivisions (a), (b), and (c) of section 65589.5 set forth legislative findings and policies as to the housing shortage and the need for approval of more housing, particularly in urban areas.

[8] Section 65589.5, subdivision (p)(1) includes a second sentence, which states: "It is the intent of the Legislature that attorney's fees and costs shall rarely, if ever, be awarded if a local agency, acting in good faith, approved a housing development project that satisfies conditions established in paragraph (1), (2), or (3) of subdivision (a) of Section 65589.5.1 or paragraph (1), (2), or (3) of subdivision (a) of Section 65589.5.2." The parties agree that the Project here does not satisfy the "conditions" identified in this portion of section 65589.5, subdivision (p)(1), and that therefore the "rarely, if ever" standard for fee awards does not apply.

12

concerns posing potentially significant health risks. In light of these potentially significant effects, plaintiffs' success in requiring that the Project's environmental impacts be "more accurately analyzed" conferred a significant public benefit.

In its final fee order issued in March 2024, the court adopted its previous explanation of its decision to award fees. The court then set forth additional analysis supporting its conclusion that a fee award remained appropriate after "the change in the law and the enactment of Government Code section 65589.5, subdivision (p)(1), effective January 1, 2024."[9]

The court began by noting that neither the language of the statute (requiring that "due weight" be given to the listed factors) (§ 65589.5, subd. (p)(1)) nor its legislative history provided detailed guidance "on how the court is to approach its task." As to the legislative history of Assembly Bill 1633 (which, among other changes, added subd. (p) to § 65589.5) (see Stats. 2023, ch. 768, § 2), the City and Monterey cited in the trial court (and cite again on appeal) a passage that states in part: "This bill also provides some additional protections for local governments who have been sued by neighbors or interest groups for approving a housing development project. In

---

[9] The trial court noted that, in their supplemental briefing addressing section 65589.5, subdivision (p)(1), the parties disagreed as to "whether the statute applies in general to this case and specifically whether it applies to this motion, which motion was substantially decided except for a few objections before the statute became effective, but was not finalized because of [the City's] and [Monterey's] objections to the wording of the final order." The court determined, however, that it was unnecessary to analyze the "retroactivity and scope of the statute." The court concluded that, assuming section 65589.5, subdivision (p)(1) applied and required consideration of the factors it identifies, plaintiffs were still entitled to fees. On appeal, Monterey and the City argue section 65589.5, subdivision (p)(1) (specifically its first sentence) applies here, and plaintiffs do not argue otherwise in their appellate brief. We will therefore assume the statute applies in this case.

13

certain circumstances where plaintiffs in such a suit challenging a housing approval are seeking the award of attorney's fees, the court would be charged with carefully considering various priorities in the HAA, the suitability of the site for housing, and the reasonableness of the local agency." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1633 (2023-2024 Reg. Sess.) as amended Sept. 8, 2023, p. 8.; accord, Conc. in Sen. Amends., Assem. Bill No. 1633 (2023-2024 Reg. Sess.) as amended Sept. 8, 2023, p. 4.)

Based on the statutory language and the legislative history, the court stated it would "carefully consider[] and weigh[]" each of the listed factors.

a. *Priorities of the HAA*

First, as to the priorities or policies of the HAA, the court noted that subdivisions (a) and (b) of section 65589.5 reflect the Legislature's recognition that the lack of housing is a critical problem threatening the economic, environmental, and social quality of life in California; there is an unmet housing need of nearly two million units; and the HAA was adopted to increase the approval of housing units.[10]  Assessing the degree to which the

---

[10] Subdivision (a) of section 65589.5 sets forth legislative findings pertaining to the critical need for additional housing.  (§ 65589.5, subd. (a)(1)(A) [lack of housing is a "critical problem that threatens the economic, environmental, and social quality of life in California"], (2)(A), (C) [supply and affordability crisis is acute and is of historic proportions], (D) [California has unmet housing backlog of nearly 2 million units], (F) ["[l]ack of supply and rising costs are compounding inequality and limiting advancement opportunities for many Californians"], (K) [Legislature's intent in enacting HAA was "to significantly increase the approval and construction of new housing for all economic segments of California's communities . . . ."], (L) [policy of the state is that the HAA "be interpreted and implemented in a manner to afford the fullest possible weight to the interest of, and the approval and provision of, housing"].)  Subdivision (b) of the statute adds that "[i]t is the policy of the state that a local government not reject or make

City's approval of the Project furthered these policies, the court stated the eight-unit Project "will have an impact [on] solving unmet housing needs, but that impact is small and inconsequential when there is a shortage of two million housing units." The court found there was no evidence the Project would have any impact on the economic and social quality of life in California. And the court noted it had previously found the Project had "the potential to have a substantial impact on the environment and the health of" City residents and the public. For these reasons, the court concluded approval of the Project did not serve the priorities of the HAA as stated in section 65589.5, subdivisions (a) and (b).

The court then addressed "the legislative policy of guiding development in urban [areas]" as set forth in subdivision (c) of section 65589.5.[11] The court stated that, based on its knowledge of the area, as well as information on the City's website, Pacifica is not an urban area. (The court also noted the City had criticized one of plaintiffs' experts for relying on studies of urban areas.) The court found the City's approval of the Project did not further "the policy of building in urban areas . . . ."

---

infeasible housing development projects . . . that contribute to meeting the need determined pursuant to this article without a thorough analysis of the economic, social, and environmental effects of the action . . . ."

[11] Section 65589.5, subdivision (c) states: "The Legislature also recognizes that premature and unnecessary development of agricultural lands for urban uses continues to have adverse effects on the availability of those lands for food and fiber production and on the economy of the state. Furthermore, it is the policy of the state that development should be guided away from prime agricultural lands; therefore, in implementing this section, local jurisdictions should encourage, to the maximum extent practicable, in filling existing urban areas."

b. *The Suitability of the Site for a Housing Development*

The court stated the City's general plan allowed housing to be built on the proposed Project site. The court noted, however, that there were concerns about the suitability of the site for housing, as the court had outlined in its earlier order on the merits of plaintiffs' CEQA claim. The City or its consultant "pointed out the project is on a steep and sloping terrain with active or recent landslides (as of 1991) and that the project could have significant impact on the geology and soils, hydrology and water quality, and noise . . . ." Also, plaintiffs' "expert on geomorphological and hydrological impacts opined that there would be significant slope destabilization and erosion even with the proposed mitigation methods." The court stated that, "while it may turn out that action can be taken to make the property suitable for housing development, based upon the court's Order, an EIR is needed to determine how to address this destabilization and erosion (along with other issues related to the environment but not housing specifically)."

c. *The Reasonableness of the Decision of the Local Agency*

The court stated it acknowledged the "tough position" the City faces when deciding whether to approve a housing project. The court noted public entities "must balance the array of laws, including CEQA and HAA, and the different demands [of] its residents and the public." The court continued: "Respondents [i.e., the City] expended a great deal of time and resources to make a decision to approve the project. There is much for the court to commend in how respondents[] approved the project. However, in light of the multiple reasons upon which this court relied to conclude that an EIR should have been performed, the court concludes for purposes of weighing the factor for the award of attorneys' fees that respondents acted unreasonably."

After considering and weighing the above factors listed in section 65589.5, subdivision (p)(1), the court concluded it was proper to award

attorney fees to plaintiffs under Code of Civil Procedure section 1021.5.  The court stated:  "After its weighing, the court concludes that a significant benefit has been conferred on the general public and the necessity of private enforcement makes the attorneys' fees and cost award appropriate in this case."

### 3. Analysis

In their appellate briefs challenging the trial court's fee award, the City and Monterey present two sets of arguments.  First, they make general claims about the proper interpretation of section 65589.5, subdivision (p)(1), contending it should be construed as imposing more significant restrictions on fee awards than the trial court recognized.  Second, they contend the court made several errors in its analysis of the specific factors identified in section 65589.5, subdivision (p)(1).  We find merit in the second of these arguments, and conclude the court exceeded the bounds of its discretion in analyzing some of the factors listed in section 65589.5, subdivision (p)(1).

### a. *Section 65589.5, Subdivision (p)(1) Does Not Preclude Consideration of a Project's Potential Environmental Impacts*

Monterey contends that, when a fee motion is filed in a case challenging approval of a housing development project, section 65589.5, subdivision (p)(1) requires the trial court to consider *only* the factors listed in that provision.  The City echoes this argument at points in its briefing, while also making a more general claim that the statute is intended to "limit" attorney fees in such cases.  A component of each of these arguments is the assertion that, under section 65589.5, subdivision (p)(1), a court addressing a fee motion may not take into account potential environmental impacts (what the City calls "potential CEQA impacts") of the proposed project.  The City and Monterey thus argue in effect that such impacts cannot be considered by a court in "weighing" (§ 65589.5, subd. (p)(1)) whether the case conferred a

17

significant benefit on the general public within the meaning of Code of Civil Procedure section 1021.5.

As noted, we review de novo questions of statutory interpretation. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Id.* at pp. 387–388.)

In our view, section 65589.5, subdivision (p)(1) does not prohibit courts from considering a housing development project's potential environmental impacts when deciding whether to award attorney fees in a case challenging the project's approval. As we have discussed, the relevant portion of section 65589.5, subdivision (p)(1) states that, when a motion for attorney fees under Code of Civil Procedure section 1021.5 is filed in a case challenging approval of a housing development project, the trial court, "in weighing whether a significant benefit has been conferred on the general public or a large class of persons and whether the necessity of private enforcement makes the award appropriate, shall give due weight to the degree to which the local agency's approval furthers policies of this section, including, but not limited to, subdivisions (a), (b), and (c), the suitability of the site for a housing development, and the reasonableness of the decision of the local agency."

Section 65589.5, subdivision (p)(1) thus requires that, as part of a "weighing" process to determine whether two of the prerequisites for a fee award under Code of Civil Procedure section 1021.5 have been satisfied, the court must give "due weight" to the listed factors—"the degree to which" the local agency's approval furthers HAA policies; the suitability of the site for housing; and the reasonableness of the agency's decision. (§ 65589.5, subd. (p)(1).) The statute does not state a court is prohibited from considering other factors that may be relevant on one side or the other of the weighing process. Instead, section 65589.5, subdivision (p)(1) just states the listed factors are to be given "due weight" (*ibid.*) within two of the inquiries a court must always conduct in determining whether fees should be awarded under Code of Civil Procedure section 1021.5 (i.e., whether the litigation has conferred a significant benefit, and whether the necessity of private enforcement makes an award appropriate). In the type of case specified in the statute (i.e., one challenging a local agency's approval of a housing development project), those inquiries are modified, not displaced, by section 65589.5, subdivision (p)(1).

Like the text of section 65589.5, subdivision (p)(1), the legislative history cited by the parties provides no basis to conclude a trial court must ignore a project's potential environmental impacts (or the benefit that may have been conferred by requiring further study of those impacts) in making the required determinations under Code of Civil Procedure section 1021.5. As noted, the cited committee analysis of Assembly Bill 1633 (which added subd. (p) to § 65589.5) states in part: "This bill also provides some additional protections for local governments who have been sued by neighbors or interest groups for approving a housing development project. In certain circumstances where plaintiffs in such a suit challenging a housing approval

19

are seeking the award of attorney's fees, the court would be charged with carefully considering various priorities in the HAA, the suitability of the site for housing, and the reasonableness of the local agency." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1633 (2023-2024 Reg. Sess.) as amended Sept. 8, 2023, p. 8.; accord, Conc. in Sen. Amends., Assem. Bill No. 1633 (2023-2024 Reg. Sess.) as amended Sept. 8, 2023, p. 4.) The statement that a court must "carefully consider[]" the identified factors (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1633 (2023-2024 Reg. Sess.) as amended Sept. 8, 2023, p. 8), like the statutory language requiring the factors be given "due weight" (§ 65589.5, subd. (p)(1)), does not mandate that nothing else can be considered.[12]

The City and Monterey discuss other changes that Assembly Bill 1633 made to section 65589.5, but those changes do not support their construction of the provision that is at issue here, i.e., the first sentence of subdivision (p)(1) of the statute. Assembly Bill 1633 added provisions to section 65589.5 (some of which were later deleted and reenacted in similar form in §§ 65589.5.1 and 65589.5.2) that were intended in part "to refine and clarify the standards, *as to certain sites*, for whether a local agency's failure to exercise discretion, or a local agency's abuse of discretion, as defined by this bill, constitutes a violation of the Housing Accountability Act (HAA) (Section 65589.5 of the Government Code) . . . ." (Stats. 2023, ch. 768, § 1(a), italics

---

[12] The City, Monterey, and amici League of California Cities and California State Association of Counties cite the legislative history of an earlier bill (Assem. Bill No. 2656 (2021-2022 Reg. Sess.)) that was not passed by the Legislature. But " ' "[u]npassed bills, as evidences of legislative intent, have little value" ' " (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 584), and we find no basis to rely on the proffered materials here.

added; see *id.*, § 2; Stats. 2024, ch. 265 (Assem. Bill No. 1413 (2023-2024 Reg. Sess.)), §§ 1, 2-3; Stats. 2024, ch. 268 (Assem. Bill No. 1893 (2023-2024 Reg. Sess.)), § 2.5.)[13] When a site covered by these provisions is involved, a local agency's failure to act with respect to certain decisions under CEQA is defined as a disapproval of a project that may subject the local agency to liability. (§ 65589.5.1, subd. (a); § 65589.5.2, subd. (a).) Among other requirements, for a site to be covered by these revised liability standards, the project at issue must have a density of at least 15 dwelling units per acre. (§ 65589.5.1, subd. (a)(3); § 65589.5.2, subd. (a)(3).) As noted, the proposed Project here would have 8 units on a 1.2-acre lot.

For the sites to which the revised HAA liability standards for local agencies apply, a stringent standard for project challengers to obtain attorney fees is set forth in the second sentence of section 65589.5, subdivision (p)(1). As we have noted above, the parties agree that sentence (which states the Legislature's intent that fees shall "rarely, if ever" be awarded when the specified conditions are met) (§ 65589.5, subd. (p)(1)) does not apply to the 8-unit Project at issue in this case. As we have also noted above, we are assuming (as did the trial court) that the first sentence of section 65589.5, subdivision (p)(1) (which requires a trial court to give "due weight" to listed factors) applies more broadly, including to the Project site here. But we are not persuaded the liability or fee award standards that apply only to a narrower set of sites support a particular construction of the "due weight" requirement (such as the City's and Monterey's view that a court conducting

---

[13] Assembly Bill 1633 states its provisions will become inoperative on January 1, 2031. (Stats. 2023, ch. 768, § 1(a).) This includes the HAA provision that is at issue in this appeal—the attorney fee provision in section 65589.5, subdivision (p). (§ 65589.5, subd. (p)(2) [subd. (p) will become inoperative on January 1, 2031].)

the necessary "weighing" process cannot consider the project's potential environmental impacts).  (§ 65589.5, subd. (p)(1).)

Similarly, the City argues that what it calls a " 'good faith defense' " in a provision applicable to fee awards for parties challenging a project *disapproval* as violative of the HAA is helpful in construing the fee provision at issue here governing fee awards to parties that challenge a project *approval* as allegedly violating other laws, such as CEQA.  We are not convinced.  What the City calls the " 'good faith defense' " provision— section 65589.5, subdivision (k)(1)(A)(ii)(II)(ia) (providing that, in certain circumstances, fees are not available to a party who shows a local agency violated the HAA by failing to approve housing) again provides (through a series of statutory cross-references) that it applies only to the specific type of project site that is covered by the provisions we have discussed above—a site where, among other requirements, the proposed housing project has a density of at least 15 dwelling units per acre.[14]  And in any event, we are not persuaded that subdivision (k) of the statute supports a particular reading of the different provision at issue here.

Finally, and more broadly, we disagree with the suggestion by the City, Monterey, and amici that the first sentence of section 65589.5, subdivision (p)(1) (the "due weight" provision that is at issue here) should be read as part of a set of fundamental legislative changes that Assembly

---

[14] See section 65589.5, subdivision (k)(1)(A)(ii)(II)(ia) (exception to fee liability applies where (1) the local agency is acting in good faith, and (2) the case involves the expanded definitions of project disapproval set forth in § 65589.5, subd. (h)(6)(I) or (J)); *id.*, subdivision (h)(6)(I)-(J) (expanded definitions of project disapproval apply only where all conditions in § 65589.5.1 or § 65589.5.2 are satisfied); section 65589.5.1, subdivision (a)(3) (conditions include that the project's density is at least 15 dwelling units per acre); section 65589.5.2, subdivision (a)(3) (same).

Bill 1633 made to the relationship between the HAA and CEQA for all cases. Since Assembly Bill 1633 focused to a significant degree on a specified category of project sites, that bill provides no basis to construe the statutory provision at issue here as imposing stringent limitations on a trial court's discretion to award fees in all cases challenging housing project approvals. The limitation imposed is the one stated in the provision's text—a court is to give "due weight" to certain factors (with no requirement that they be given exclusive or dispositive weight) as part of a larger "weighing" process under Code of Civil Procedure section 1021.5. (§ 65589.5, subd. (p)(1).)

We now turn to the City's and Monterey's claim that the trial court here erred in its evaluation of the factors listed in the first sentence of section 65589.5, subdivision (p)(1).

b. *The Trial Court Abused Its Discretion in Evaluating the Factors Listed in Section 65589.5, Subdivision (p)(1)*

As discussed, section 65589.5, subdivision (p)(1) requires that when a fee motion under Code of Civil Procedure section 1021.5 is filed in a case challenging the approval of a housing development project, a court, in weighing whether a significant benefit has been conferred on the general public and whether the necessity of private enforcement makes the award appropriate, must "give due weight to the degree to which the local agency's approval furthers policies of this section, including, but not limited to, subdivisions (a), (b), and (c), the suitability of the site for a housing development, and the reasonableness of the decision of the local agency." The trial court here concluded in its August 29, 2023 ruling that Code of Civil Procedure section 1021.5's significant benefit and necessity of private enforcement criteria were met. The court then analyzed the section 65589.5, subdivision (p)(1) factors in its final fee order issued on March 6, 2024,

23

concluding those factors did not change its conclusion plaintiffs are entitled to fees.

### i. HAA Policies

The court exceeded its discretion in evaluating "the degree to which" the City's approval of the Project furthered the HAA's policies. (§ 65589.5, subd. (p)(1).) First, as to the HAA policy to alleviate the housing shortage (see, e.g., § 65589.5, subd. (a)(1)(A), (2)(A), (C), (D), (F), (K), (L)), the court stated the 8-unit Project here would have some impact but not a significant one in light of the 2-million-unit shortage statewide. The City and Monterey contend the court erred by considering the statewide need and instead should have assessed the Project in light of regional housing targets.

This factor calls for consideration of "the degree to which" a project, if approved, would further the statutory policy to expand the housing supply. (§ 65589.5, subd. (p)(1); see *id.*, subds. (a), (b).) The statutory language gives trial courts some discretion in applying the factor—a larger project may be found to further state policy to a greater "degree" (§ 65589.5, subd. (p)(1)) than a smaller one. But in our view it would render this factor meaningless to measure the impact of an individual housing project by comparing it to the total statewide housing need. Because no project could be found to make a significant impact on the state's estimated two-million-unit shortfall, we conclude the use of a statewide benchmark exceeds the bounds of reason.

Instead, application of this factor should be informed by a more localized consideration of the circumstances surrounding a particular project. In this regard, we note that, according to materials in the administrative record, the City's regional housing needs allocation (RHNA) required it to build 413 units for the 8-year cycle from 2015 to 2023 (the period during which the City's 2020 approval of the Project occurred). And during the

period from 2015 to 2020, the City permitted only 96 total units, or an average of 16 units per year.

Turning to the City's and Monterey's other arguments pertaining to whether the approval of the Project furthered statutory policies, they suggest the court erred by considering the Project's potential negative environmental impacts. We find no error on this point. It is not a policy of the HAA to approve housing without conducting environmental review appropriate to the situation. (§ 65589.5, subd. (e) [HAA does not relieve local agency from complying with CEQA].) Defendants did not appeal the court's judgment that further CEQA review was needed here due to multiple potentially significant environmental and health impacts (that were not due to a technical or minor violation). In assessing "the degree to which" the City's approval of the Project furthered HAA policies (§ 65589.5, subd. (p)(1)), the court reasonably could consider whether the City's action—approving, without adequate review, a potentially quite unsuitable project—served statutory policies.

Of course, this is not to say (and the trial court did not find) that every successful CEQA action challenging the approval of a housing development project will result in an award of attorney fees. That determination must be made on a case-by-case basis, after considering the criteria in Code of Civil Procedure section 1021.5 and, as part of that inquiry, giving "due weight" to the factors in section 65589.5, subdivision (p)(1). The court did not abuse its discretion by considering, as part of the statutory weighing process, the Project's potentially significant environmental impacts.

We conclude, however, that the court exceeded its discretion in concluding the Project did not further the statutory policy that "local jurisdictions should encourage, to the maximum extent practicable, in filling

25

existing urban areas" (§ 65589.5, subd. (c)).[15] The City and Monterey suggest that, in assessing this factor, the court should not have relied on its own knowledge of Pacifica, and instead should have used a definition of a similar term (" '[u]rbanized area' ") that is found in a different statutory provision. (§ 65589.5.1, subd. (b) & (b)(5) ["[f]or purposes of this section, . . . [¶] . . . '[u]rbanized area' " has the meaning as defined in Pub. Resources Code, § 21071]; Pub. Resources Code, § 21071, subd. (a) [defining " '[u]rbanized area' " based on an incorporated city's population and in combination with that of contiguous cities].)

We do not adopt the City's and Monterey's suggestion that a trial court assessing this factor must use a particular definition found in a different statute. But we conclude it is inappropriate for a trial court to evaluate this factor using a categorical approach that designates an entire county or city as being urban or not urban. As noted, section 65589.5, subdivision (c) states in part that, "in implementing this section, local jurisdictions should encourage, to the maximum extent practicable, in filling existing urban areas." This language is consistent with the reality that, in a given local jurisdiction, there are likely to be some "urban areas," and the statute provides that development should be focused in those areas and "guided away from prime agricultural lands." (*Ibid.*) A categorical approach that designates an entire community as urban or not urban not only ignores this reality, but also could have the unintended effect of releasing significant communities within the state (those that are viewed as being categorically not urban) from an

---

[15] As noted above, the Project site is "bordered by a single-family residence to the south, a multi-family apartment complex west across Monterey Road, and vacant land to the north and east."

26

appreciation of the need to comply with the obligation all communities have to build new housing. (See §§ 65580, subd. (d), 65581, subd. (a).)

### ii. *Suitability of the Project Site*

As noted, in assessing the suitability of the Project site for housing, the trial court acknowledged the applicable general plan allowed residential construction on the site. The court noted, however, that there had long been concerns about the steep sloping terrain, and there were potential risks for slope destabilization and erosion that required further review. Suggesting the court should have disregarded these concerns, the City contends the Project site should be deemed suitable for housing because the City's general plan and zoning designations allow for it. In a similar but more pointed argument, Monterey claims that, in assessing suitability under section 65589.5, subdivision (p)(1), the court had to use a definition of the phrase " 'land suitable for residential development' " that focuses on zoning classifications and appears in a different statutory provision—a provision that states the definition at issue is for purposes of that section. (§ 65583.2, subd. (a) ["[a]s used in this section, 'land suitable for residential development' includes" sites with various zoning classifications].)

These arguments, in essence, restate the broader assertion that environmental impacts of a project must not be considered under section 65589.5, subdivision (p)(1). But for the "weighing" analysis required by section 65589.5, subdivision (p)(1), the Legislature did not require that "the suitability of the site for a housing development" be measured solely by general plan and zoning classifications, much less that courts are to use a particular definition of a similar phrase in a different statute. The trial court here could reasonably determine that a potential risk for landslides and erosion—a risk that it had previously found, in an unappealed final

27

judgment, was significant enough to require further review—weighed against the suitability of the site for housing.[16]

To be sure, we so conclude with one significant reservation. The CEQA challenge here required the trial court to determine only whether substantial evidence supported a "fair argument" that the project may have a significant effect on the environment. This is a " 'low threshold' " test, with doubts resolved in favor of environmental review. (*Pocket Protectors v. City of Sacramento* (2004) 124 Cal.App.4th 903, 928.) Under the "fair argument" test, "contrary evidence"—i.e., evidence that the project will *not* have a significant effect on the environment—"is not adequate to support a decision to dispense with an EIR." (*Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1316.) Given the applicable legal standard, the trial

---

[16] We deny the requests by the City and Monterey that we take judicial notice of a post-judgment (and post-fee order) disciplinary ruling involving one of plaintiffs' experts, who opined about the risk of slope destabilization and erosion. The evidence would not establish the trial court erred in assessing the record before it. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [appellate court generally reviews correctness of trial court ruling by considering matters that were before the trial court].) Moreover, in attempting to relitigate the slope destabilization and erosion issues, the judicial notice requests seek in effect to attack the court's findings in its final judgment on the merits of the CEQA claim, which the City and Monterey chose not to appeal. Finally, the City and Monterey overstate the importance of the challenged expert report to the court's fee order. Although the court cited the report at issue when discussing the suitability of the site, the court explained its overall ruling was based on a broad set of information and materials, including the background of the case, "the entire administrative record," and the parties' briefing.

We also deny the request by Monterey (not joined by the City) that we take judicial notice of several other documents relating to such matters as regional housing data, census information, and wildlife protection. The documents were not submitted to the trial court and are not relevant to our resolution of this appeal.

court's 2022 merits ruling is not properly understood as a determination that the project will have, or even that it is likely to have, significant environmental effects. In ruling on the fee motion, the trial court stated that "potential destabilization" of the site is "a true concern, especially in light of the storms in 2023 and 2024 that have caused damage to many Bay Area communities." And as it did when drawing on its own knowledge of Pacifica, here too the trial court appears to have relied on information that the parties did not present and that was not subject to adversarial testing. When a court weighs potential environmental impacts under the "suitability" factor, it should do so in a manner consistent with the preliminary nature of its inquiry in the underlying proceeding.

### iii. *Reasonableness of the City's Decision*

Finally, we find no abuse of discretion in the trial court's assessment of the reasonableness factor identified in section 65589.5, subdivision (p)(1). The court acknowledged that, when deciding whether to approve a housing project, the City is in a "tough position" and "must balance the array of laws, including CEQA and HAA, and the different demands [of] its residents and the public." The court also stated the City expended significant time and effort and there was "much for the court to commend" in how the City proceeded. But the court stated that, "in light of the multiple reasons upon which this court relied to conclude that an EIR should have been performed, the court concludes for purposes of weighing the factor for the award of attorneys' fees that respondents acted unreasonably." We find no abuse of discretion in this conclusion.

The City and Monterey suggest that, when assessing the reasonableness of the City's approval decision for purposes of a fee award under section 65589.5, subdivision (p)(1), the applicable standard of reasonableness is one set forth in section 65589.5, subdivision (f)(4). But that

provision does not define the term "reasonable" or address the weighing process applicable to fee awards under subdivision (p)(1) of the statute.[17] More broadly, we reject the City's and Monterey's view that, under the HAA, a local agency's compliance with land use designations and zoning classifications dictates that its approval of a housing project must be deemed reasonable for purposes of section 65589.5, subdivision (p)(1).

As noted, the HAA expressly states it does not relieve a local agency from complying with CEQA. (§ 65589.5, subd. (e).) In our view, a trial court may properly find a local agency acted unreasonably, for purposes of the fee inquiry under section 65589.5, subdivision (p)(1), if it approved a housing development project without conducting adequate review of its environmental impacts. This does not mean, as Monterey suggests, that "*any* CEQA error" will establish that a local agency acted unreasonably. But a trial court may conclude, based on the nature and extent of the environmental concerns that it has found are potentially significant and require further review, that on balance the local agency's approval decision was unreasonable. Here, the court noted there were "multiple reasons" it had relied on to conclude an EIR should have been performed. The court did not abuse its discretion in concluding "for purposes of weighing the factor for the award of attorneys' fees that respondents acted unreasonably."

As we have outlined above, we conclude the trial court exceeded its discretion in analyzing the factors identified in section 65589.5,

_____

[17] Section 65589.5, subdivision (f)(4) states: "For purposes of this section, a housing development project or emergency shelter shall be deemed consistent, compliant, and in conformity with an applicable plan, program, policy, ordinance, standard, requirement, or other similar provision if there is substantial evidence that would allow a reasonable person to conclude that the housing development project or emergency shelter is consistent, compliant, or in conformity."

subdivision (p)(1). Specifically, the court erred by (1) using a statewide benchmark to assess "the degree to which" (§ 65589.5, subd. (p)(1)) the Project at issue here furthered the state policy to expand housing (see *id.*, subds. (a), (b)), and (2) categorically treating all of Pacifica as not an urban area when determining "the degree to which" (*id.*, subd. (p)(1)) the Project furthered the state policy requiring local jurisdictions to "encourage, to the maximum extent practicable, in filling existing urban areas" (*id.*, subd. (c)). In addition, as to the requirement that a court consider "the suitability of the site for a housing development" (*id.*, subd. (p)(1)), we have clarified that a court may consider potential environmental impacts when assessing suitability, but it should do so in a manner consistent with the preliminary nature of its inquiry in the underlying proceeding. We will reverse the court's fee award and remand for the court to reconsider the matter in light of the views expressed in this opinion.

For the guidance of the trial court and the parties on remand, we will address (in pts. II.C & II.D, *post*) the City's and Monterey's remaining appellate arguments.

## C. *Fees for Plaintiffs' General Plan Law Claim*

The City contends the trial court should have reduced the fee award to reflect that plaintiffs, although successful on their CEQA cause of action, did not succeed on their cause of action alleging violation of the law governing general plans, a claim that was dismissed without prejudice by agreement of all parties. In its fee order, the court awarded fees on the general plan law claim, rejecting the City's challenge on this point. We find no abuse of discretion.

"We apply a two-step inquiry in analyzing whether [Code of Civil Procedure] section 1021.5 fees are appropriate where a plaintiff achieves limited success." (*Sweetwater Union High School District v. Julian Union*

31

*Elementary School District* (2019) 36 Cal.App.5th 970, 996.) Under this approach (which California courts adopted from *Hensley v. Eckerhart* (1983) 461 U.S. 424) (see *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238–239 (*EPIC*)), the first step "requires a court to examine whether the prevailing party's unsuccessful claims are related to its successful ones." (*EPIC, supra,* 190 Cal.App.4th at p. 239.) " 'If the different claims are based on different facts and legal theories, they are unrelated; if they involve a common core of facts or are based on related legal theories, they are related.' " (*Sweetwater Union High School District*, at p. 997.)

"If successful and unsuccessful claims are *related*," the court proceeds to the second step of the *Hensley* inquiry, "which asks whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' [Citation.] In this step, the court will 'evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." ' " (*EPIC, supra,* 190 Cal.App.4th at p. 239, original italics.) Both steps of this inquiry "involve factual determinations usually committed to the trial court's discretion." (*Id.* at p. 240, fn. 13.)

As the trial court here noted, California courts addressing the first step of the *Hensley* inquiry (i.e., determining whether a plaintiff's claims are based on different facts and legal theories) "have distinguished between unsuccessful 'theories' and unsuccessful 'claims.' [Citation.] Courts have discretion to compensate a partially successful plaintiff for time spent on unsuccessful legal theories, provided such time was reasonably incurred. [Citation.] But a reduction in the fee award may be appropriate where a plaintiff has failed to succeed on some of its claims. [Citation.] The

32

distinction between theories and claims is not always clear. As a general rule, however, California courts have tended to distinguish theories and claims by comparing the goals or objectives of the plaintiff's litigation with the relief ultimately obtained. [Citation.] The rule might aptly be summarized as follows: 'success counts and is to be judged . . . by the relief given or the right established.' " (*EPIC, supra,* 190 Cal.App.4th at p. 240.)

Here, the trial court noted that, in both causes of action, plaintiffs sought to have the Project approvals rescinded. Plaintiffs achieved this objective. The court did not abuse its discretion by concluding that plaintiffs therefore satisfied the first step of the *Hensley* inquiry. On appeal, the City notes plaintiffs initially sought other relief in their general plan claim, such as an order directing the City to update its general plan. The City also asserts the two claims should be viewed as having sought to remedy different courses of conduct. But the court did not abuse its discretion in treating the claims as related based on its determination that plaintiffs obtained their ultimate objective of having the Project approvals rescinded (a goal they sought to achieve via alternate theories in their two causes of action).

After finding plaintiffs' successful and unsuccessful claims were related, the trial court proceeded to the second step of the *Hensley* analysis, which, as noted, "asks whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' [Citation.] In this step, the court will 'evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." ' " (*EPIC, supra,* 190 Cal.App.4th at p. 239.) The trial court found that, in light of the results achieved by plaintiffs here, no fee reduction was warranted. The court explained: "In this case, the court agrees with plaintiff that by having the project approvals rescinded, they

received the result they desired and it would have been an inefficient use of resources to continue prosecuting the second cause of action [i.e., the general plan claim]."

The City argues plaintiffs' voluntary dismissal of their general plan law claim "ma[de] a lot of the litigation unnecessary," so it would be unjust to award them fees for that claim. But the trial court did not abuse its discretion in finding that a voluntary dismissal was appropriate given plaintiffs had achieved the result they desired by prevailing on their CEQA claim. While a court may reduce fees that are not reasonably incurred, the court was not required to find that was the case here.

## D. *The Monterey Parties' Liability for Attorney Fees*

In its fee order, the trial court found the real parties in interest (i.e., the Monterey parties: Monterey Road Pacifica LLC, Vistamar Development (Vistamar), and Javier Chaverria) were liable for attorney fees under Code of Civil Procedure section 1021.5. For most of the fees, the Monterey parties and the City defendants are jointly and severally liable; for the remainder of the award, the Monterey parties are jointly and severally liable.

On appeal, the Monterey parties argue the court abused its discretion by finding Vistamar and Chaverria liable for fees. We disagree.

"[A] real party in interest in a mandamus proceeding that has a direct interest in the litigation, more than merely an ideological or policy interest, and actively participates in the litigation is an opposing party within the meaning of Code of Civil Procedure section 1021.5 and can be liable for attorney fees under the statute." (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 161.) Applying this standard, the trial court found the Monterey parties were liable for attorney fees because they "were defendants

34

who actively participated in the litigation and it is their Project that is the subject of the litigation."[18]

The Monterey parties now challenge this conclusion only as to Vistamar and Chaverria. The Monterey parties contend in part that (1) Vistamar and Chaverria should not have been listed as Project applicants, and (2) their degree of participation in the proceeding was less than that of Monterey Road Pacifica LLC. But these factual assertions—disputed in significant part by plaintiffs in their appellate brief—provide no basis for reversal. At most, the parties' competing accounts suggest the court could have reached a different conclusion as to fee liability. The Monterey parties have not shown the court erred or abused its discretion.

## III. DISPOSITION

The trial court's March 6, 2024 order awarding attorney fees is reversed. The matter is remanded for further proceedings consistent with this opinion. On remand, in determining whether an award of attorney fees to plaintiffs under Code of Civil Procedure section 1021.5 is appropriate, the trial court shall consider the factors identified in section 65589.5, subdivision (p)(1) (the degree to which approval of the Project furthers HAA policies; the suitability of the site for a housing development; and the reasonableness of the City's decision to approve the Project), factors that are not exclusive and may be considered in conjunction with other relevant factors.

---

[18] In their opposition to plaintiffs' fee motion, the Monterey parties argued broadly that none of them could be held liable for attorney fees. The trial court's above ruling responded to that argument. The Monterey parties do not identify in the record any evidence that, in connection with the fee motion, they asked the trial court to parse their relative roles for purposes of fee liability.

The City defendants and the Monterey parties shall recover their costs on appeal.

                                                                    STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
MOORMAN, J.*

---

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:       Superior Court of California, County of San Mateo

Trial Judge:       Hon. Nancy L. Fineman

Counsel:           Burke, Williams & Sorensen, Michelle Marchetta Kenyon,
                   Stephen E. Velyvis and Caitlin R. Eliason for
                   Defendants and Appellants.

                   Patterson & O'Neill, Ryan J. Patterson and Brian J. O'Neill
                   for Real Parties in Interest and Appellants.

                   Horvitz & Levy, John F. Querio and Benjamin P. Covington
                   for YIMBY Law, Bay Area Council, California Building
                   Industry Association, Californians for Homeownership,
                   Inc., California Housing Defense Fund, California
                   Housing Partnership Corporation, Housing Action
                   Coalition, and San Francisco Bay Area Planning and
                   Urban Research Association as Amici Curiae on behalf
                   of Appellants.

                   Colantuono, Highsmith & Whatley, Andrew L. Jared and
                   Pamela K. Graham for League of California Cities and
                   California State Association of Counties as Amici
                   Curiae on behalf of Appellant City of Pacifica.

                   Lozeau│Drury and Richard T. Drury for Plaintiff and
                   Respondent Coalition of Pacificans for an Updated
                   Plan.

                   Law Offices of Brian Gaffney and Brian Gaffney for
                   Plaintiff and Respondent Kristin Cramer.

                   Carstens, Black & Minteer, Michelle N. Black; Shute,
                   Mihaly & Weinberger and William J. White for
                   Endangered Habitats League, Planning and
                   Conservation League, Communities for a Better
                   Environment, and Environmental Defense Center as
                   Amici Curiae on behalf of Plaintiffs and Respondents.